David M. Schlachter, Esq.
LAW OFFICES OF DAVID M. SCHLACHTER, LLC
579 Main Avenue
Passaic, New Jersey 07055
(973) 272-4768
Davids@lawdms.com – DS1694
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
BARBARA CAMPBELL, MARLENE GATHERS
 and PHILLIP SCOTT,

                  **Docket No. 11 civ 1588**

        Plaintiffs,

                  **AMENDED COMPLAINT**

THE BANK OF NEW YORK TRUST CO.,
N.A., JP MORGAN CHASE BANK, N.A.,
 and GMAC BANK, LLC.,                **Jury Trial Requested**
MORTGAGE ELECTRONIC
REGISTRATION SERVICE, INC. ("MERS"),
And 2005 RS3 RAMP Series 2005-RS3
Trust as Trustee,
        Defendants.
-------------------------------------------------------

Plaintiffs, BARBARA CAMPBELL, MARLENE GATHERS, and PHILIP SCOTT, (hereinafter

"Plaintiffs"), by their undersigned counsel, DAVID M. SCHLACHTER, ESQ. of LAW

OFFICES OF DAVID M. SCHLACHTER, LLC, for their Amended Complaint alleges, upon

personal knowledge as to themselves and their own acts and upon information and belief as to all

other matters, as follows:

## NATURE OF ACTION

    1.    This matter that pertains to bank fraud, quiet title, and civil theft by Defendants.

## VENUE

    2.    Venue is proper because of the federal questions at law, under 28 U.S.C.  Sec.

1331.

3. Venue is proper because the Plaintiffs reside in the Southern District of New York, and the cause of actions took place in the Southern District of New York.

## PARTIES

4. Plaintffs are individuals who reside at and are rightful owners of 12 Inverness Road, Scarsdale, County of Westchester, New York.

5. Defendant the Bank of New York Trust Company is a corporation that was licensed to do business in New York State and did business in New York State.

6. Defendant J.P. Morgan Chase is a corporation that is licensed to do business in New York State and did business in New York State.

7. GMAC Bank is a corporation that is licensed was licensed to do business in New York State and did business in New York State.

8. MERS is a corporation, and may be a government sponsored organization, that is licensed to do business in New York, and has its business office 1595 Spring Hill Road, Vienna, Virginia 22182.

9. 2005 RS3 RAMP Series 2005-RS3 Trust is a Trust set up for the purposes of securizing the underlying mortgage and trading it on the public market and stock exchanges, and is located 8400 Normandale Lake Boulevard, Suite 600, Minneapolis, Minnesota 55437.

## AS TO THE FIRST CAUSE OF ACTION – THEFT AND FRAUD

10. As a bit of a background, Defendant J.P. Morgan Chase started a foreclosure action in Supreme Court of New York, Westchester County, with the Index No. 5849/2006.

11. Defendant Bank of New York also started a foreclosure action with Index No. 16483/2008.

12. The 2006 action went to foreclosure sale and then was dismissed.

13. Plaintiff paid satisfaction in the amount of $196,764.37 only to later learn that J.P. Morgan Chase never owned the Note or Mortgage and had no standing to bring the action.

14. Additionally, Plaintiffs paid $45,000 in attorney's fees.

15. Further, this action went on even with the second and current foreclosure action filed against Plaintiffs in Supreme Court of Westchester County.

16. Both actions were commenced and, until recently, executed and prosecuted by Steven J. Baum, P.C.

17. J.P. Morgan Chase, Bank of New York, and Steven J. Baum, P.C. thus are seen planning on filing, commencing, and prosecuting fraudulent actions against unsuspecting homeowners.

18. Bank of New York did not stop J.P. Morgan Chase from continuing its action even while it filed its own action against Plaintiffs.

19. It is not logically possible that Bank of New York would allow a foreclosure action going while it held the Note and Mortgage without consenting to it.

20. Bank of New York and J.P. Morgan Chase, both retaining Steven J. Baum, P.C., had to or should have known about the duplicative proceedings, did nothing about them, and allowed them continue.

21. Further, neither party really owns the Note or Mortgage (this to be brought up more in depth below).

22. Thus, both parties started foreclosure proceedings fraudulently.

23. Plaintiffs have suffered emotional distress, heart ache, stress, and depression as a result of their legal woes.

24. Plaintiff also lost the $196,764.37 that was never applied to their mortgage.

WHEREFORE, Plaintiff seek a judgment in the amount of $197,764.37 plus punitive damages, and other such relief the Court deems proper and just.

## AS TO THE SECOND CAUSE OF ACTION -

## WRONGFUL INSURANCE CHECK CONVERSION

25. Plaintiffs reallage all allegations made thus far.

26. In 2006 fire damage destroyed a good portion of the house.

27. On or about May 31, 2006, the homeowner insurance carrier, Travelers Indemnity Insurance paid to Plaintiffs $258,040.90 in order to pay for the damage.

28. There as an additional $70,000 holdback because the work on the home was not done on time.

29. The work could not be done because the bank took the money and refused to payout for Plaintiffs' use toward repair.

30. This was additional money to be paid by insurance carrier of work was done timely.

31. The check for $258,040.90 required the endorsement of the mortgage company.

32. Plaintiff sent the check to Homecoming Financial c/o of J.P. Morgan Chase because J.P. Morgan Chase indicated it was the assignee of the mortgage.

33. Instead J.P. Morgan Chase or Bank of New York got their hands on it as they obtained the assignment via legal means or fraud.

34. The check was never returned and never applied to the mortgage account.

35. Plaintiffs spent more than $70,000 out of pocket and in their own labor to repair the home to make it seem livable.

36. Because the damage was never fixed properly the home needed more repairs over the years.

37. Plaintiffs put in an additional $100,000 in repairs and maintenance over the past five years because of the absconded funds.

38. As legal homeowners at the time the $258,040.90 belonged to Plaintiff and could not be used to apply to a mortgage or any other means without permission by Plaintiff.

39. Plaintiff never gave such permission.

40. Thus, $428,040.90 was taken wrongfully by Defendants from Plaintiff.

WHEREFORE, Plaintiffs seek a judgment in the amount of $428,040.90 plus punitive damages, and other such relief the Court deems proper and just.

### AS TO THE THIRD CAUSE OF ACTION - WIRE FRAUD

41. Plaintiffs reallage all allegations made thus far.

42. Defendants used wires to transfer their monies into the account, the $258,040.90 and the $196,764.37.

43. Thus, Defendants committed wire fraud.

WHEREFORE, Plaintiff seeks a judgment against Defendants and punitive damages, and other such relief the Court deems proper and just.

### AS TO THE FOURTH CAUSE OF ACTION - CREDIT SLANDER

44. Plaintiffs reallage all allegations made thus far.

45. When J.P. Morgan Chase, Bank of New York, and Steven J. Baum, P.C. conspired to commence and continue fraudulent foreclosure actions against Plaintiff, it ruined their credit.

46. Plaintiff Philip Scott works on credit as I do special projects.

47. Without credit he cannot get contractors or investors to front projects for me.

48. His business is in building and designing playgrounds and parks within the city and surrounding suburbs.

49. If his credit is shot, which it became, then he loses investors.

50. The foreclosure actions destroyed his credit.

51. This has cost him about $2,000,000 in project income over the past 5 years.

WHEREFORE, Plaintiffs seek a judgment in the amount of $2,000,000, plus punitive damages, and other such relief the Court deems proper and just.

## AS TO THE FIFTH CAUSE OF ACTION – FRAUD AND QUIET TITLE

52. Plaintiffs reallage all allegations made thus far.

53. Defendants never attached or provided a Note to Plaintiffs about how much exactly they will pay.

54. Defendants will not be able to and do not own the original Note and Mortgage, they also do not own the original good chain of title in assignments.

55. In a review of the documents that indicate a chain of title, it is clear that while all three banks sent letters to Plaintiffs asking for money and claiming to be connected to the Note and Mortgage, all three failed to possess good chain of title with original Notes and Mortgages.

56. After the mortgage was made it was sent to Mortgage Electronic Registration Service (MERS).

57. However, MERS does not hold Notes and Mortgages, merely is nominee to track them.

58. Thus, assignments made by MERS is irrelevant.

59.     Additionally, the presence of assignments by MERS indicates that the Note and Mortgage are in two different places, with two different holders.

60.     However, Mortgages must be with the same holder of the Note to be effective.

61.     In this case they are not.

62.     Furthermore, the assignment in this matter giving title between Defendants is acknowledged on March 1, 2006 but prepared on April 3, 2006.

63.     It is impossible that it be assigned before it was prepared, and thus it is fraud.

64.     Plaintiffs just became aware of this fraud.

65.     Furthermore, the assignment documents are executed by a Jeffery Stepen of GMAC.

66.     There are two issues.

67.     First, GMAC claims only to be the servicer, but the assignment is showing GMAC may have a larger stake than just servicer.

68.     Therefore, that needs to be straightened out.

69.     Second, Jeffrey Stephens is a known robo signer.

70.     There is vast evidence that he was put in a position to execute thousands of assignments per day, and yet he could not possibly have assigned all with full knowledge and review of the file.

71.     He further has stated he never even saw original Note and Mortgage documents when he executed the assignments.

72.     Defendants placed the Note and Mortgage in Defendant 2005 RS3 RAMP Series 2005-RS3.

73. However, this was done after the time regulated by law and the trust expired (over the 3 year period.

74. However, this was done despite not having clear and good original chain of title.

75. Thus, Defendants conspired to right an error in chain of title by fraud.

76. Plaintiffs challenge Defendants to appear in Court with original Note and Mortgage and all assignments, properly executed, and originally signed.

WHEREFORE, Plaintiffs seek a judgment of Quiet Title, and damages, punitive damages, and other such relief the Court deems proper and just.

## AS TO THE SIXTH CAUSE OF ACTION –

## FEDERAL STATUTE CLAIMS – DOES NOT RISE TO RESCISSION

77. Plaintiffs reallage all allegations made thus far.

78. The interest rate given to Plaintiffs was adjustable based on the LIBOR index which is arbitrary and volatile.

79. Additionally, it is more than 8% in violation of Homeownership and Equity Protection Act (HOEPA, 15 U.S.C. § 1639).

80. It is also high despite being three homeowners taking the mortgage.

81. The reason why such a high interest rate was given is because we are African-American, in violation of the Fair Housing Act (42 U.S.C. § 3504, 3605, Civil Rights Statute).

82. It is also a sub-prime loan because the high interest rate was given over arbitrarily, and not because of merit or bargained for before the closing.

83. Defendants knew or should have known about this history if they allegedly took the rightful assignments.

84. Further, no Note was provided to hide the terms of the actual repayment.

85. The conduct of Defendants in brining double foreclosure actions, in collecting off a mortgage they do not own, in failing to properly prosecute actions in Supreme Court, in harassing Plaintiffs in foreclosure litigation, all lead up to Banking and Consumer Fraud violations.

86. Again, while these claims fall short of recession Plaintiffs are entitled to statutory and punitive damages (see Memorandum of Law).

WHEREFORE, Plaintiffs seek a judgment for damages, punitive damages, and other such relief the Court deems proper and just.

## AS TO THE SEVENTH CAUSE OF ACTION –
## NEW YORK LAW IS ALSO VIOLATED

87. Plaintiffs reallage all allegations made thus far.

88. Because this is a cause of action brought in Federal Court on a Question of Federal Law Plaintiff may join the New York Claims as well.

89. This loan is a "High Cost" loan in violation of NY Banking Law §6-L.

90. That is because it was made for loan flipping as the loan bounced around MERS in various assignments.

91. This loan is also sub-prime under New York Law NY RPAPL §1304 because it is 3% higher than the U.S. Treasury yield.

92. The U.S. Treasury Yield was 4.44% in June 15, 2005.

93. The interest rate of this mortgage was above 8% (more than 3% higher).

94. This loan and the conduct by Defendants also violates Deceptive Practices Act (New York GBL §349).

95. Defendants engaged in bait and switch, in changing who owns the assignments, and in brining actions claiming to own the mortgage when it is not possible for both to have owned it the same time.

96. Further, the Note and Mortgage documents were placed in Defendant Trust and traded on the open market and stock exchange in violation of Securities and Exchange Commission regulation and against regulation by New York State Law.

97. This cause of action allows for treble damages.

WHEREFORE, Plaintiffs seek a judgment for damages, plus punitive damages, and other such relief the Court deems proper and just.

## AS TO THE EIGHT CAUSE OF ACTION - RICO

98. Plaintiffs reallage all allegations made thus far.

99. Plaintiffs again reiterate that it is not possible for Bank of New York and J.P. Morgan Chase to bring action in Supreme Court and the other party not knowing about it.

100. Additionally, one action cannot remain after a payoff was made.

101. Further, absconding with insurance funds and failing to give Plaintiff any benefit for them is also fraud and unlawful.

102. Because both banks had Steven J. Baum, P.C., the facts can only show that all three worked together.

103. They worked together from 2006 through 2011.

104. This pattern of repeated behavior against Plaintiffs arises to the level of civil conspiracy to defraud.

105. Defendant J.P. Morgan Chase started a foreclosure action in Supreme Court of New York, Westchester County, with the Index No. 5849/2006.

106. Defendant Bank of New York also started a foreclosure action with Index No. 16483/2008.

107. The 2006 action went to foreclosure sale and then was dismissed.

108. Plaintiff paid satisfaction in the amount of $196,764.37 only to later learn that J.P. Morgan Chase never owned the Note or Mortgage and had no standing to bring the action.

109. Additionally, Plaintiffs paid $45,000 in attorney's fees.

110. Further, this action went on even with the second and current foreclosure action filed against Plaintiffs in Supreme Court of Westchester County.

111. Both actions were commenced and, until recently, executed and prosecuted by Steven J. Baum, P.C.

112. J.P. Morgan Chase, Bank of New York, and Steven J. Baum, P.C. thus are seen planning on filing, commencing, and prosecuting fraudulent actions against unsuspecting homeowners.

113. Bank of New York did not stop J.P. Morgan Chase from continuing its action even while it filed its own action against Plaintiffs.

114. It is not logically possible that Bank of New York would allow a foreclosure action going while it held the Note and Mortgage without consenting to it.

115. Bank of New York and J.P. Morgan Chase, both retaining Steven J. Baum, P.C., had to or should have known about the duplicative proceedings, did nothing about them, and allowed them continue.

116. Further, neither party really owns the Note or Mortgage.

117. Thus, both parties started foreclosure proceedings fraudulently.

118. Plaintiffs have suffered emotional distress, heart ache, stress, and depression as a result of their legal woes.

119. Further, the parties worked together to fix and amend chain of title.

120. Further, only one Defendant could have held original Note and Mortgage, thus the others did not have the Note and Mortgage.

121. Further, Defendant Trust was used to correct irreparable errors in the chain of title of the Note and Mortgage and for trading the security unlawfully.

122. All this was done in a fraudulent manner.

WHEREFORE, Plaintiff seek a judgment for damages, plus punitive damages, and other such relief the Court deems proper and just.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that his Court enter judgment:

a) Granting damages to Plaintiff as asked for.

b) Granting injunction for Defendant to prove that it owns title to the Notes and Mortgages subject to this litigation.

c) Granting injunction for Defendant to produce the original Notes, Mortgages, and duly executed Assignments of the subject mortgage.

d) Declaring the chain of title irreparably broken.

e) Granting damages to Plaintiff for inducing Plaintiff to pay monies to the wrong entity.

f) Granting punitive damages for the conduct and fraud.

g) Granting attorney's fees to Plaintiff.

h) Other relief that this Court deems proper.

**DEMAND FOR A TRIAL BY JURY**

Plaintiff demands a trial by jury.

Dated: New York, New York
September 13, 2012

This Complaint is signed as true based on a review of the file and facts as presented to me by the Plaintiffs and a review of Plaintiffs previously sworn to statements.

By_____
David M. Schlachter, Esq.
LAW OFFICES OF
DAVID M. SCHLACHTER, LLC
579 Main Avenue
Passaic, New Jersey 07055
(973) 272-4768
DS1694
Davids@lawdms.com
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------
BARBARA CAMPBELL, MARLENE GATHERS
 and PHILLIP SCOTT,

                                              **Docket No. 11 civ 1588**

                      Plaintiffs,


THE BANK OF NEW YORK TRUST CO.,
N.A., JP MORGAN CHASE BANK, N.A.,
 and GMAC BANK, LLC.,
MORTGAGE ELECTRONIC
REGISTRATION SERVICE, INC. ("MERS"),
And 2005 RS3 RAMP Series 2005-RS3
Trust as Trustee,

                    Defendants.
---------------------------------------------------------


**SUMMONS / COMPLAINT**



This certifies under the Fed. R. Civ. P. that this pleading is not made frivolously under law and it is only made in good faith.


                                                          David M. Schlachter, Esq.
                                                          LAW OFFICES OF DAVID M.
                                                          SCHLACHTER, LLC
                                                          DS - 1694
                                                          579 Main Avenue
                                                          Passaic, New Jersey 07055
                                                          (973) 272-4768 phone
                                                          (973) 272-4167 fax
                                                          davids@lawdms.com
                                                          Attorneys for Plaintiffs